```
          IN THE UNITED STATES DISTRICT COURT
       FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

**EARNEST OWENS AND**
**ANITA OWENS,**

        **Plaintiffs,**

v.                                              CIVIL ACTION NO. 1:20CV55
                                                                        (Judge Keeley)

**THE CITY OF PENNSBORO,**
**a West Virginia Municipal**
**Corporation, and R.T. DAVIS,**

        **Defendants.**

**MEMORANDUM OPINION AND ORDER GRANTING**
**THE CITY OF PENNSBORO'S MOTION TO DISMISS COUNTS V AND VI**
**OF THE OWENSES' SECOND AMENDED COMPLAINT [DKT. NO. 35]**

In this civil rights action, the Plaintiffs, Earnest and Anita Owens ("Mr. and Mrs. Owens"), allege that the Defendant, R.T. Davis ("Officer Davis"), used excessive force to unlawfully arrest and imprison them. They further aver that the Defendant, the City of Pennsboro ("Pennsboro"), is liable for Officer Davis's conduct. Mr. and Mrs. Owens filed their Second Amended Complaint on August 28, 2020, seeking relief under 18 U.S.C. § 1983 and the Constitutions of the United States and the State of West Virginia (Dkt. No. 34). On September 8, 2020, pursuant to Federal Rule of Civil Procedure 12(b)(6), Pennsboro moved to dismiss the claims against it in the Second Amended Complaint (Dkt. No. 35). During a scheduling conference on January 7, 2021, after hearing oral argument, the Court **GRANTED** Pennsboro's motion (Dkt. No. 35) and

**MEMORANDUM OPINION AND ORDER GRANTING**
**THE CITY OF PENNSBORO'S MOTION TO DISMISS COUNTS V and VI**
**OF THE OWENSES' SECOND AMENDED COMPLAINT [DKT. NO. 35]**

**DISMISSED** Counts V and VI of the Second Amended Complaint **WITH PREJUDICE.**

### I. BACKGROUND

On March 26, 2019, while Mr. Owens was driving outside of Pennsboro, debris may have flown out of his truck bed and struck another vehicle (Dkt. No. 34 at ¶¶ 7, 9-10).[1] Mr. Owens and the driver of the other vehicle pulled into a nearby parking lot, where the other driver accused Mr. Owens of damaging his vehicle. Id. at ¶¶ 11-12. Although Mr. Owens denied he had caused any damage, he stayed at the scene after the other motorist called the police. Id. at ¶¶ 13-14. Officer Davis responded to the incident. Upon arriving on the scene, he directed Mr. Owens to provide his insurance information and return to his truck. Id. at ¶¶ 15-17. Mr. Owens complied with these instructions. Id.

While back in his truck, Mr. Owens notified Mrs. Owens of the situation. She in turn contacted the owner of the company whose name appeared on the other vehicle. Id. at ¶ 18. She then went to the scene to "inform" Officer Davis that the company's owner did not wish to make a claim against Mr. Owens. Id. at ¶¶ 19-21. When Mr. and Mrs. Owens approached Officer Davis in his police cruiser

---

[1] The facts are taken from the Second Amended Complaint and are construed in the light most favorable to Smith. See De'Lonta v. Johnson, 708 F.3d 520, 524 (4th Cir. 2013).

**MEMORANDUM OPINION AND ORDER GRANTING**
**THE CITY OF PENNSBORO'S MOTION TO DISMISS COUNTS V and VI**
**OF THE OWENSES' SECOND AMENDED COMPLAINT [DKT. NO. 35]**

with this information, he became angry and threatened to arrest Mrs. Owens for obstructing a police officer. Id. at ¶¶ 22-23. Mrs. Owens again attempted to explain her conversation with the owner of the truck, but Officer Davis yelled at her and ordered both Mr. and Mrs. Owens to return to their vehicles. Id. at ¶ 21.

As Mr. Owens started back to his truck, Officer Davis grabbed his arm and slammed him against his truck. Id. at ¶¶ 26-29. Officer Davis then threw a semi-conscious Mr. Owens face down onto the pavement, used his knee to jump up and down on Mr. Owens's back, and ultimately arrested him.[2] Id. at ¶¶ 30-32. Officer Davis next grabbed Mrs. Owens by the wrist, pushed her into the side of the police cruiser, cursed at her, and arrested her. Id. at ¶¶ 33-35. Mr. Owens was charged with Obstructing an Officer, Disorderly Conduct, Littering, and Destruction of Property. Id. at ¶ 37. Mrs. Owens was charged with Obstructing an Officer and Disorderly Conduct. Id. All of these charges were later dismissed. Id. at ¶ 38.

Based on these facts, Mr. and Mrs. Owens have asserted three causes of action (Dkt. No. 34): (1) Counts I and II allege § 1983 claims of excessive force against Officer Davis; (2) Count III and

---

[2] Attached to the Second Amended Complaint are images of the injures Mr. Owens allegedly sustained during this altercation (Dkt. No. 34-1, 34-2. 34-3).

**MEMORANDUM OPINION AND ORDER GRANTING
THE CITY OF PENNSBORO'S MOTION TO DISMISS COUNTS V and VI
OF THE OWENSES' SECOND AMENDED COMPLAINT [DKT. NO. 35]**

IV state false arrest and false imprisonment claims against Officer Davis; and (3) Counts V and VI assert that, under Monell v. Department of Social Services, 436 U.S. 658 (1978), Pennsboro is liable for Officer Davis's conduct.

## II. LEGAL STANDARD

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that it does not "state a claim upon which relief may be granted." When reviewing the sufficiency of a complaint, the district court "must accept as true all of the factual allegations contained in the complaint." Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)). "While a complaint . . . does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 (2007) (internal citation omitted). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

To be sufficient, "a complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" Anderson, 508 F.3d at 188 n.7 (quoting Twombly, 550 U.S. at 547). "A claim

Case 1:20-cv-00055-IMK   Document 55   Filed 02/10/21   Page 5 of 12   PageID #: 305

**OWENS V. PENNSBORO ET AL**                                              **1:20CV55**

**MEMORANDUM OPINION AND ORDER GRANTING
THE CITY OF PENNSBORO'S MOTION TO DISMISS COUNTS V and VI
OF THE OWENSES' SECOND AMENDED COMPLAINT [DKT. NO. 35]**

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

### III. DISCUSSION

Mr. and Mrs. Owens have not stated a municipal liability claim against Pennsboro based on their failure to plead sufficient facts establishing (1) that Officer Davis was a "final policymaker" for Pennsboro, or (2) that Pennsboro had any policy or custom that caused their alleged constitutional deprivations.

**A.**

Title 42 U.S.C. § 1983 provides a remedy for those who suffer a "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by one acting "under color of any statute, ordinance, regulation, custom, or usage, of any State." Municipalities may be sued directly under § 1983 for monetary relief where the alleged unconstitutional act stems from the actions of a final policymaker or an established municipal policy. Monell, 436 U.S. at 690; Santos v. Frederick Cty. Bd. Of Comm'rs, 725 F.3d 451, 470 (4th Cir. 2013) (citing Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986)). This "ensures that the municipality is 'responsible' for the alleged violations of a plaintiff's constitutional rights." Id.

**MEMORANDUM OPINION AND ORDER GRANTING
THE CITY OF PENNSBORO'S MOTION TO DISMISS COUNTS V and VI
OF THE OWENSES' SECOND AMENDED COMPLAINT [DKT. NO. 35]**

**B.**

Mr. and Mrs. Owens have failed to plausibly allege that Officer Davis was one of Pennsboro's final policymakers. A municipality may be liable under § 1983 for a single unconstitutional act or decision by its final policymaker. Pembaur, 475 U.S. at 470. However, "courts must distinguish between mere policymaking and final policy making authority because liability only attaches to final policy making authority." Armstrong v. City of Greensboro, 190 F. Supp. 3d 450, 474 (M.D.N.C. 2016) (citing Riddick v. School Bd. Of City of Portsmouth, 238 F.3d 518, 523 (4th Cir. 1987)). A "final policymaking official" has the responsibility and authority to implement final municipal policy with respect to a particular course of action. Pembaur, 475 U.S. at 482-83; see also, Spell v. McDaniel, 824 F.2d 1380, 1386 (4th Cir. 1987) ("'[P]olicymaking authority' implies authority to set and implement general goals and programs of municipal government, as opposed to discretionary authority in purely operational aspects of government.").

The Second Amended Complaint contains only conclusory allegations about Officer Davis's role as Pennsboro's final policymaker. For example, it merely alleges that "as the Chief of Police Officer Davis, is the 'policymaker' with respect to

Case 1:20-cv-00055-IMK   Document 55   Filed 02/10/21   Page 7 of 12   PageID #: 307

OWENS V. PENNSBORO ET AL                                        1:20CV55

MEMORANDUM OPINION AND ORDER GRANTING
THE CITY OF PENNSBORO'S MOTION TO DISMISS COUNTS V and VI
OF THE OWENSES' SECOND AMENDED COMPLAINT [DKT. NO. 35]

[Pennsboro's] Police department/law enforcement agency" (Dkt. No. 34 at ¶ 63). It then concludes that "Pennsboro, through its policymaker [Officer Davis] is liable for [Mr. and Mrs. Owens'] harms." Id. at ¶ 68. Mr. and Mrs. Owens claim only that, by virtue of his position, Officer Davis is Pennsboro's policymaker. They do not allege that Pennsboro designated the position of its Chief of Police as a final policymaker. Nor do they explain how Pennsboro delegated that policymaking authority to Officer Davis, or the bounds of such delegation. These threadbare recitations of a municipal liability claim do not withstand Pennsboro's motion to dismiss.

Mr. and Mrs. Owens also fail to designate Officer Davis as a "final policymaker." The Second Amended Complaint refers to him only as a "policymaker." Id. at ¶ 63; Riddick, 238 F.3d at 523. In response to Pennsboro's motion to dismiss, they assert that West Virginia Code § 8-14-3 grants chiefs of police the authority to arrest individuals, and reason that Officer Davis's decisions regarding arrests and law enforcement policy therefore are final policymaking decisions for which Pennsboro may be held liable (Dkt. No. 40 at 2-3).[3]

---

[3] Pennsboro urges the Court not to consider Smith's reliance on W. Va. Code § 8-14-3 where he did not include this allegation in the

**MEMORANDUM OPINION AND ORDER GRANTING
THE CITY OF PENNSBORO'S MOTION TO DISMISS COUNTS V and VI
OF THE OWENSES' SECOND AMENDED COMPLAINT [DKT. NO. 35]**

Such reliance on § 8-14-3 is misplaced. This statute outlines the "powers, authority, and duties of law enforcement officials," and describes the various responsibilities of police officers, fire marshals, and sheriffs. W. Va. Code § 8-14-3. In relevant part, it permits a chief of police and any member of a municipal police department, any municipal sergeant, any municipal fire marshal, and any deputy sheriff to effectuate arrests. Under Mr. and Mrs. Owens' interpretation, each Pennsboro police officer, fire marshal, and sheriff would be a final policymaker, and any arrest by them would be a final policymaking decision for which Pennsboro could be held liable. As this obviously cannot be, their argument that Officer Davis created municipal policy by arresting them fails of its own weight. Officer Davis was not a final policymaker and did not create a final municipal policy when he arrested Mr. and Mrs. Owens. Rather, he exercised his individual discretion in carrying out his duties as a police officer. Spell v. McDaniel, 824 F.2d at 1386.

Moreover, § 8-14-1 specifically limits the decision-making authority of any municipal chief of police by subjecting municipal police forces "to the authority, control and discipline of the

---

Second Amended Complaint (Dkt. No. 44 at n.2). In fairness to Smith, the Court will address his argument.

Case 1:20-cv-00055-IMK   Document 55   Filed 02/10/21   Page 9 of 12   PageID #: 309

OWENS V. PENNSBORO ET AL                                              1:20CV55

MEMORANDUM OPINION AND ORDER GRANTING
THE CITY OF PENNSBORO'S MOTION TO DISMISS COUNTS V and VI
OF THE OWENSES' SECOND AMENDED COMPLAINT [DKT. NO. 35]

administrative authority." Pennsboro Municipal Ordinance § 2-202 also places Pennsboro police officers under the "control of the Mayor" (Dkt. No. 44 at 3). Pursuant to this statutory guidance, Officer Davis's policymaking authority is limited by both Pennsboro's administrative agency and mayor. And because his decisions are subject to review, he cannot be classified as a "final" policymaker. Even assuming that, as Chief of Police, Officer Davis possessed authority to establish policy for his own department, there is no evidence that such authority permitted him to promulgate municipality-wide policy.

Based on this, Mr. and Mrs. Owens have failed to plausibly allege that Officer Davis is a final policymaker whose decisions could subject Pennsboro to municipal liability.

### C.

Mr. and Mrs. Owens also have failed to plead the existence of any official policy or custom that caused their injuries. A municipality may be liable under § 1983 when the constitutional deprivation arises from a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell, 436 U.S. at 690. "[A] municipality is subject to Section 1983 liability only when its policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the

Case 1:20-cv-00055-IMK   Document 55   Filed 02/10/21   Page 10 of 12   PageID #: 310

OWENS V. PENNSBORO ET AL                                           1:20CV55

MEMORANDUM OPINION AND ORDER GRANTING
THE CITY OF PENNSBORO'S MOTION TO DISMISS COUNTS V and VI
OF THE OWENSES' SECOND AMENDED COMPLAINT [DKT. NO. 35]

plaintiff's injury." Santos, 725 F.3d at 470. Here, no policy enacted by Pennsboro's legislative body or promulgated by someone with final policymaking authority that caused the injuries alleged by Mr. and Mrs. Owens has been identified in their Second Amended Complaint.

Municipal liability also may arise from an informal custom, or "relevant practice so widespread as to have the force of law, though not formally approved by a legislative body." Bd. of the Cnty. Comm'rs v. Brown, 520 U.S. 397, 403 (1997). A custom can include "a municipality's failure to hire, train, supervise, and discipline its employees," but only if the plaintiff demonstrates that the municipality was "deliberately indifferent toward the constitutional rights at stake." Nutter v. Mellinger, 2020 WL 401790, *3 (S.D.W. Va. 2020) (citing City of Canton v. Harris, 489 U.S. 378, 379 (1989)). However, a single incident of alleged unconstitutional conduct is insufficient to plead a custom under Monell. See Mull v. Griffith, 2019 WL 5295189, at *6 (N.D. W. Va. 2019) ("[T]here must be 'numerous particular instances' of unconstitutional conduct in order to establish a custom or practice").

Here, Mr. and Mrs. Owens allege that Officer Davis had "a custom, pattern and practice of committing unlawful acts of violence" (Dkt. No. 34 at ¶ 65). They then assert that because

Case 1:20-cv-00055-IMK Document 55 Filed 02/10/21 Page 11 of 12 PageID #: 311

OWENS V. PENNSBORO ET AL                                        1:20CV55

MEMORANDUM OPINION AND ORDER GRANTING
THE CITY OF PENNSBORO'S MOTION TO DISMISS COUNTS V and VI
OF THE OWENSES' SECOND AMENDED COMPLAINT [DKT. NO. 35]

Officer Davis was the Chief of Police Pennsboro knew of his unlawful acts and "adopted a policy to ratify [Officer Davis's] actions." Id. at ¶¶ 66-67. Again, Mr. and Mrs. Owens have included no factual support for these allegations. To demonstrate Officer Davis's alleged propensity for violence, they refer only to the facts surrounding their own arrests and Officer Davis's arrest of Thomas Smith, as pleaded in Smith v. Pennsboro, 1:20CV55.

But they identify no other instances of violence by Officer Davis. Nor do they explain how Officer Davis's status as Chief of Police would impute knowledge of his alleged misdeeds to Pennsboro, or how Pennsboro had notice of a pattern of unlawful conduct. Although the arrests at issue occurred one year after Officer Davis's arrest of Smith, these two occasions do not amount to "numerous particular instances" of unconstitutional conduct that establish a municipal custom of ratifying his conduct or failing to discipline Officer Davis. Therefore, Mr. and Mrs. Owens' allegations are insufficient to establish that Pennsboro was deliberately indifferent to their constitutional rights, or that Pennsboro had adopted a custom of ratifying Officer Davis's alleged unlawful conduct. Mull, 2019 WL 5295189 at *6.

**MEMORANDUM OPINION AND ORDER GRANTING**
**THE CITY OF PENNSBORO'S MOTION TO DISMISS COUNTS V and VI**
**OF THE OWENSES' SECOND AMENDED COMPLAINT [DKT. NO. 35]**

## IV. CONCLUSION

The Court **GRANTS** Pennsboro's motion to dismiss (Dkt. No. 35) and **DISMISSES WITH PREJUDICE** Count III of Smith's Second Amended Complaint (Dkt. No. 34).

It is so **ORDERED.**

The Clerk **SHALL** enter a separate judgment order in favor of Pennsboro and transmit copies of both Orders to counsel of record. DATED: February 10, 2021.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE